## DODSON *v.* DODSON.
### [37 Pac. 542.]

PAROL AGREEMENT FOR INTEREST IN REALTY — STATUTE OF FRAUDS — CODE, ₹ 781.— Plaintiff erected on his ward's premises fish wheels, and operated them for his own benefit. Upon majority of the ward, it was agreed by parol to operate the wheels in partnership, plaintiff to have a half interest in the wheels and premises. Nothing was paid by plaintiff or the partnership for such property. *Held*, ( 1 ) that the fish wheels are realty, and the property of the son, and ( 2 ) that there being no written instrument conveying such interest, as required by Hill's Code, ₹ 781, the fish wheels were not partnership property :* *Knott* v. *Knott*, 6 Or. 142, and *Flower* v. *Barnekoff*, 20 Or. 132, distinguished.

APPEAL from Multnomah: LOYAL B. STEARNS, Judge.

The plaintiff Ira Dodson is the father of the defendant Hiram E. Dodson. The son arrived at the age of majority January tenth, eighteen hundred and ninety. For several years prior to this date the plaintiff was also the general

---

* For the validity of a parol partnership for dealing in lands, see an exhaustive note to the California case of *Bates* v. *Babcock*, in 16 L. R. A. 745, 29 Am. St. Rep. 133. —REPORTER.

guardian of defendant. The date of his appointment as such is not fixed definitely, but from the evidence it is reasonable to conclude that the appointment was made in the year eighteen hundred and eighty-one. On the sixteenth day of March, eighteen hundred and eighty-one, the defendant became owner in fee simple of lot two, section thirty-six, and lot one, section thirty-five, township two north, range six east, in Multnomah County, Oregon, and continued to be such owner until the nineteenth day of August, eighteen hundred and ninety-one, when he deeded all his interest therein to one Samuel J. Gorman, reserving, however, to himself "the right to erect, maintain, and forever keep two (2) fish wheels on the Columbia River, opposite and adjacent to said property, and to have the right of ingress and egress along the shore thereto." Some time during the year eighteen hundred and eighty-two the plaintiff erected a fish wheel upon a portion of the premises, and this being washed away by high water, he and one Guinean built another during the same year, and engaged in the fishing business together. The following year the plaintiff and one Denny built another wheel upon the premises, Denny at the same time buying the interest of Guinean in the first wheel, whereupon the plaintiff and Denny continued the business for some time, employing the two fish wheels therein. In eighteen hundred and eighty-seven the plaintiff bought Denny's interest in the wheels and business, and leased them to one Warren for the years eighteen hundred and eighty-eight and eighteen hundred and eighty-nine; so that in eighteen hundred and ninety, when the son became of age, the wheels described in plaintiff's complaint as "the two stationary fish wheels on the Columbia River between Warrendale and Maple Dell," were upon the premises of the defendant. The plaintiff, as guardian of the defendant, was never licensed by the county court to build the wheels upon the premises of the defendant,

nor does he claim to have erected them in the capacity of guardian, but solely in his individual capacity.    The record shows that on the nineteenth day of January, eighteen hundred and ninety-one, the plaintiff was, by order of the county court, discharged as guardian, with the written consent of his ward.

This suit is for dissolution of a copartnership, the sale of the copartnership property, and a division of the funds between the members thereof.    The complaint alleges, in substance, that on or about the —— day of January, eighteen hundred and ninety-one, plaintiff and defendant entered into an oral agreement, wherein and whereby it was agreed that plaintiff and defendant should be equal partners and owners in two stationary fish wheels on the Columbia River, describing their location; that in said contract of partnership it was further agreed that plaintiff and defendant should operate said wheels jointly, and should share equally in the labor and expense of operating the same, and in the profits arising therefrom, and the losses, if any; that plaintiff and defendant continued so to operate said wheels, and to divide the profits thereof, during the seasons of eighteen hundred and ninety-one and eighteen hundred and ninety-two; and that on or about the twentieth day of December, eighteen hundred and ninety-two, the defendant by force of arms excluded the plaintiff from said copartnership property.    These allegations are all put in issue by the answer.    The plaintiff was mistaken in fixing the date of said agreement and the commencement of said alleged copartnership as in January, eighteen hundred and ninety-one; he evidently intended to fix said date a year earlier.

The plaintiff testifies that on or about the tenth day of January, eighteen hundred and ninety, "he (defendant) agreed that I could have half, one half of the fish, and interests in the wheels — the fishing interests there." Upon

cross-examination he says, in eighteen hundred and ninety,
"I had an agreement to go into partnership for the wheels
— a verbal agreement. It was some time along in January
or February after he (defendant) became of age." The de-
fendant being called as a witness in his own behalf, denied
these statements *in toto*, but the old gentleman was cor-
roborated in some measure by the testimony of Judge J. C.
Moreland, touching the admissions of the defendant to the
effect " that the fish wheels were partnership property,
and they were to run together, and the profits divided,"
but his recollection of the conversation was not distinct.
The plaintiff and defendant operated the wheels together
up to December twentieth, eighteen hundred and ninety-
two, sold the "catch" from time to time, and divided the
proceeds. They also seem to have participated jointly in
defraying the expenses of the business, but the evidence
does not disclose that plaintiff paid anything for an in-
terest in the wheels. The decree of the court below was
in favor of plaintiff, declaring the fish wheels and premises
partnership property, and ordering the same sold and
proceeds divided, from which decree defendant appeals.

MODIFIED.

*Mr. Franklin P. Mays*, for Appellant.

The record presents two questions argued in the court
below: (1) Was there a partnership agreement? (2) If
there was a partnership agreement, was it within the stat-
ute of frauds? As the oral agreement, if proven, (which
appellant strongly denies,) was void, because in parol, I
shall refer to only so much of the testimony as is neces-
sary to present that point. It is conceded on all sides that
the stationary fish wheels in controversy were affixed per-
manently to the tracts of land mentioned in the complaint.
If the alleged agreement was made early in eighteen
hundred and ninety, as the respondent testifies, this land
was then owned absolutely by appellant. If, however,

the agreement was not made until early in eighteen hundred and ninety-one, as the complaint alleges, then appellant had at that time only an easement therein, because, in August of eighteen hundred and ninety, he deeded the land in question to a Mr. Gorman.   This Gorman deed reserved to appellant the right to maintain these wheels thereon, and to carry on the fishing business, and besides to have all rights necessarily incident thereto.   But whether appellant owned the land, or only the easement therein, can make no difference as to the rule of law in this case, as an easement is an interest in land, and can only be passed by a grant, and ordinarily by a deed, or what is equivalent thereto.   This is well settled law.   It is so held in Washburn on Easements, 23; and BEAN, J., speaking for this court in *Foss* v. *Newburg,* 20 Or. 257, at page 260, after holding that an easement is an interest in the land, says: "Parol license, merely, is not sufficient to create an easement.   It must, therefore, follow that since it is considered an interest in land, a contract to convey or grant an easement in order to be enforceable must be evidenced by a writing." This decision further holds that such is the rule, not because the statute provides that a parol contract is an illegal one, but because the statute provides that only a certain kind of written evidence shall be considered in such cases.

Now this alleged contract being an attempt to create or transfer from the son to the father, by parol, one half interest in his land, or easement, is void by section 781 of Hill's Code.   Or, if it should be deemed (as it well might be) an oral agreement for the sale of an interest in the land, or easement, by the son to the father, it is also void by subdivision 6 of section 785 of Hill's Code.

It is not denied, as I understand the contention, that if this oral agreement was forbidden by statute, the respond-

ent cannot prevail. It is contended, however, that the agreement was for a partnership in lands, and did not therefore fall within the statutes requiring a writing. To support this claim respondent's counsel in the court below cited *Knott* v. *Knott*, 6 Or. 142, and *Flower* v. *Barnekoff*, 20 Or. 132, besides other cases to the same effect. The rule of law laid down in these cases cannot be questioned when applied to a proper case, but that they have here no applition whatever is equally unquestionable. The line of demarcation seems perfectly clear: In each of the cases cited, and for that matter in all other cases that announce the same rule, it will be observed that the partnership was formed for the purpose of speculating in, or doing something about, some lands, thereafter, in some way, to be acquired, and handled, for its use or benefit. In such cases it is clear that when the agreement is made, no lands are owned by the firm, and neither party attempts to convey or assign any to the other. It is a result of the agreement, but not the agreement itself, that causes either party, as partner or otherwise, first to take any interest in or right to any lands procured for the partnership, or with its funds.

In the class of cases cited no land is owned by either of the partners, or the partnership, at the time the agreement is made, but is made with reference to lands to be acquired under the same. On the other hand, in cases like the one at bar, where one of the partners, at the time the agreement is made, owns the land which by the agreement it is sought to make partnership property, the statute clearly applies, because by the agreement it is attempted to transfer title from such owner to the partnership. In this case, by an oral agreement respondent seeks to acquire from appellant a one-half interest in the land, or easement, then owned by appellant. This is not a suit for the proceeds, but for the land itself — to make

respondent an equal owner therein. Before respondent can succeed he must be decreed to be the owner, by virtue of an oral agreement, of land, or an easement, which at the time the agreement was made, was owned absolutely by appellant.

Again, the contract sued on, is, in effect, simply an agreement between respondent and appellant that respondent shall be the owner of a half-interest in this land, or easement. It amounts to a contract for the sale of lands, and not being in writing, is void. It does not appear that there was ever any agreement for a conveyance, so the contract could not be enforced specifically, even if valid. But a contract void by the statute cannot be enforced directly or collaterally. It confers no right and creates no obligation as between the parties to it: *Dung* v. *Parker*, 52 N. Y. 494; *Dumphy* v. *Ryan*, 116 U. S. 496. There is no fraud in a breach of such an oral contract. The party who so refuses stands upon the law and has a right to refuse. The rule in this case is as binding on a court of equity as on a court of law. The respondent knew, or ought to have known, that the statute requires such a contract to be in writing. That he did not require a writing is his own neglect, and he cannot now expect a court of equity to relieve him therefrom. This statute, founded in wisdom and justified by long experience, is absolutely necessary and should be unhesitatingly enforced.

*Mr. Richard W. Montague*, for Respondent.

The real property— the fish wheels and fishing rights— are held in this case as a necessary incident to the partnership business, not as the "substratum of the partnership," or in other words this is a partnership using real property, not dealing in it. In this case it is well settled that the statute of frauds has no application: *Knott* v. *Knott*, 6 Or.

142–145; Brown on Statute of Frauds, §§ 259–261*a*; Bates on Partnership, § 301, and cases cited; Am. and Eng. Ency. Law, vol. VIII, 701, 702, and cases cited; *Marsh* v. *Davis*, 33 Kan. 326; *Fall River Company* v. *Borden*, 10 Cush. 458, 467, 469; *York* v. *Clemens*, 41 Iowa, 95, 101, 102; *Treat* v. *Hiles*, 68 Wis. 344, 60 Am. Rep. 858; *Personette* v. *Pryme*, 34 N. J. Eq. 26.

The doctrine of *Dale* v. *Hamilton*, 5 Hare, 369, established in this state by *Knott* v. *Knott*, 6 Or. 142, and settled by *Flower* v. *Barnekoff*, 20 Or. 132, covers this case, and the distinction attempted to be made by appellant between property acquired after the partnership is constituted, and that previously owned by the members or acquired contemporaneously with the agreement, is without validity, and contrary to the authorities: Browne on Statute of Frauds, § 261*a*; *Marsh* v. *Davis*, 33 Kan. 326, where the point is squarely decided. See also *Robbins* v. *McKnight*, 1 Halst. Ch. 642, 45 Am. Dec. 406; *Willey* v. *Bradley*, 60 Ind. 92, which are perfectly analogous to this; *Gooch* v. *Sullivan*, 13 Nev. 78; *Brown* v. *Morris*, 83 N. C. 251.

This case is taken out of the statute of frauds by the carrying on of the partnership business, the making of valuable improvements by the partnership, and the possession of respondent constituting part performance, or rather an execution of the agreement: *Knott* v. *Knott*, 6 Or. 142–147; *Marsh* v. *Davis*, 33 Kan. 326; *Smith* v. *Yocum*, 110 Ill. 142; *Northrop* v. *Boone*, 66 Ill. 368; *Mauck* v. *Melton*, 64 Ind. 414; *Carney* v. *Carney*, 95 Mo. 353; *Daniels* v. *Lewis*, 16 Wis. 146; *Parne* v. *Wilcox*, 16 Wis. 202. Where it is held that the abandonment of a right (as here the right of respondent to obtain allowance for improvements made on the estate) may constitute part performance sufficient to take a case out of the statute.

Opinion by MR. JUSTICE WOLVERTON.

The only question in this case is whether, conceding the alleged contract set up in plaintiff's complaint to have been clearly proven, it contravenes the statute of frauds as not being in writing.  The contention of plaintiff is that the parties having entered into partnership relations for the purpose of engaging in the fishing business, the "fish wheels and fishing rights" are held as a necessary incident to the partnership business, and that the statute of frauds has no application.  It is admitted by counsel on both sides that the interest in the fish wheels and fishing rights appurtenant thereto is an interest in real property.  It is impossible for a partnership, as such, to hold the legal title to real property; it must stand in the name of some person or persons, or a corporation, the corporation being a person in law.*  How are we to know, then, what real property is partnership property, and what is not?  "The general rule is undoubtedly this: Real estate purchased for partnership purposes, and appropriated to those purposes, paid for by partnership funds, and necessary for partnership purposes, always becomes partnership property.  *  *  *  The three elements above stated must unite in order to make the real estate necessarily partnership property": Parsons on Partnership, 364; *Dyer* v. *Clark,* 5 Met. (Mass.), 562, 39 Am. Dec. 697; *Howard* v. *Priest,* 5 Met. (Mass.), 582; *Knott* v. *Knott,* 6 Or. 142; *Sherwood* v. *St. Paul Railway Company,* 21 Minn. 127.  Partnership real property thus held, whether by one or more members of the firm, is, by an equitable conversion, regarded as personal property, for the purpose of paying debts and adjusting the equities between the parties; and the individual member or members holding the legal title become trustees for the partnership in respect to the property, as personalty: *Fairchild* v. *Fairchild,* 64 N. Y. 479.  The pre-

---

*In this connection see *Kelley* v. *Bourne,* 15 Or. 476.— REPORTER.

vailing elements of a resulting trust are found present, and are necessary to impress partnership real property with the characteristics of personalty. There must be a disposition, conveyance, or transfer of the legal estate, and a consideration paid by the beneficiary; and yet another element is necessary to impress the realty with these characteristics, it must be appropriated to the purposes of the partnership. The beneficiary is always the partnership, and the persons holding the legal estate are usually the partners, or some one of their number, but it may be an outside party having nothing to do with the partnership. When these three elements are potent factors in a partnership transaction, the equitable conversion spoken of takes place, and the real property of the partnership is considered personalty for the purposes of paying debts and adjusting equities between the partners. But whether held as personalty or under the conditions of a resulting trust, it is equally unaffected by and is without the statute of frauds. Hill's Code, § 781, provides that "no estate or interest in real property, nor any trust or power concerning such property, * * * can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing," etc. Real property may, however, be appropriated to partnership purposes, and often is, and may be essentially necessary for such purposes, and not be the property of the partnership.

It now remains to apply the facts of this case to the principles of law herein announced. That a partnership existed between plaintiff and defendant from about January or February, eighteen hundred and ninety, to the commencement of this suit, there is but little doubt. The lower court so found, and this court finds no reason to disturb that finding. The parties divided the profits of the business, and shared in the expenses of the concern, and

treated with and recognized each other in full accord with the existence of a partnership. At the date upon which the parties entered into this copartnership the defendant was the owner in fee of the two wheels and real property described in the complaint. What effect must be given to the contract of copartnership as touching this property? The plaintiff's statement of the contract is, that "he (defendant) agreed that I could have half,—one half of the fish, of the fish and interests in the wheels,—the fishing interests there." But it is not disclosed by this or any other testimony that plaintiff paid defendant anything for this half-interest, or undertook or agreed to pay anything therefor, nor did the partnership, as such, ever pay, or undertake or agree to pay, any consideration for this property; there was no purchase of it by the partnership with partnership funds. Such a contract being in parol could not have the effect of transferring from the defendant to plaintiff a half-interest in the premises and fish wheels. It was a mere *nudum pactum*, so far as the land and such wheels were concerned. "A parol agreement by the buyer of lands to admit another into partnership with him is void under the statute of frauds, as not different from the contract of buyer and seller": Bates on Law of Partnership, § 302. Nor could it have the effect of creating a trust concerning land, so as to secure a beneficial interest in the plaintiff for the payment of partnership liabilities, and much less a joint personal interest with the defendant. SMITH, J., in *Parker* v. *Bowles*, 57 N. H. 496, a case wherein two parties had actually purchased and taken deeds each for an undivided one half interest in premises occupied by a mill which was thereafter operated by them as partners, says: "The referee has found that there was no actual notice and no written agreement, and of course no record, by which any conversion of property from separate to partnership estate was effected. He has also found that

Atwood purchased half of the mill property with the ex-
pectation of going into partnership in the lumbering busi-
ness with Bowles, and did go into partnership with him,
and that they considered and agreed between themselves
to treat the real estate which they occupied in transacting
their partnership business as partnership property. This
agreement was not in writing signed by them, and it there-
fore seems clear that no trust concerning this land could
be created, so as to secure a beneficial interest in the
owners for the payment of their partnership liabilities by
their parol agreement. Indeed, our statute expressly for-
bids it. (Citing statute, which is similar to the statute of
Oregon in that respect.) When land is purchased with
partnership funds and for partnership purposes, there is
an implication of law that the land is held for the partner-
ship. But where it is purchased with the separate funds
of the partners, it cannot, by a verbal agreement between
themselves, be converted into copartnership property, be-
cause no trust in lands can be created, unless by writing,
except such as arises or results by implication of law; and
parol evidence is not admissible to prove any declaration
of trust, or agreement of the parties for a trust, although
it is received to establish a fact from which the law will
raise or imply a trust": *Alexander* v. *Kimbro*, 49 Miss. 529;
*Wheatly's Heirs* v. *Calhoun*, 12 Leigh, 269, 278, 37 Am. Dec.
654.

There are some cases which hold, where persons have
been let into partnership by parol under an agreement
that they should become partners in the realty held as an
incident to the business, after long and continued exist-
ence of the partnership, and payment of the consideration,
either in part or whole, that they had acquired an inter-
est in the realty by virtue of such copartnership agree-
ment. But those cases are sustained upon the principle of
part performance, and that it would be inequitable to allow

the other partners to retain the benefits, and at the same time appropriate the entire realty. Of such are the cases of *In re Farmer*, *Ex parte Griffin*, 10 Chicago Legal News, 395, and *Marsh* v. *Davis*, 33 Kan. 326, 6 Pac. 612, and others of the same class. But these cases have no application here, as no consideration was paid by plaintiff, and there has been no part performance. The plaintiff claims, however, that he expended in putting in these fish wheels upon the premises of the defendant some seven thousand dollars, and gave the son an allowance during his minority of from thirty dollars to forty dollars per month, and that this and other smaller expenditures in his behalf was accepted by the son, upon final settlement of the guardianship, as a consideration for the half interest in the fish wheels and premises. Upon the other hand the plaintiff cut large quantities of wood from the premises during the minority of the son, and received rents and profits from the land and fish wheels, and it does not appear that he ever filed an account with the county court as guardian of the son. The defendant, therefore, claims that plaintiff was in his debt. However this might have been at the time the alleged contract was entered into, these differences were not discussed nor considered, nor was there any settlement between these parties in regard to them until quite a year afterwards, January nineteenth, eighteen hundred and ninety-one, when defendant filed his written consent in the county court to the discharge of plaintiff as his guardian, and the exoneration of his bondsmen. So that at the time the contract was entered into no consideration for the agreement was in the mind of either party, hence it cannot be said that plaintiff parted with anything of value, or that he has performed even in part his part of the agreement.

The counsel for each party cite *Knott* v. *Knott*, 6 Or. 142,

26 OR.—46.

and *Flower* v. *Barnekoff*, 20 Or. 132, 25 Pac. 370, as authority in support of their respective theories. In the case first mentioned the land was a "necessary incident to the copartnership business," and was purchased with partnership funds, which latter element of the trust is entirely lacking in the case at bar. The case of *Flower* v. *Barnekoff* belongs to another class, of which *Dale* v. *Hamilton*, 5 Hare, 369, is the leading case. The land, in this class of cases, constitutes the "substratum of the partnership," the commodity in which it deals, and is in no way an incident of the business. The doctrine of these cases is "that the plaintiff might first prove by parol the existence of the partnership as an independent fact, and, that being established, might then show by the same evidence his interest in the lands considered as the substratum of the partnership." So that the two classes of cases are entirely distinct, and certain elements are necessary and requisite as potent factors in creating the trust in the former which are dispensed with in the latter. Hence it is apparent that the doctrine of the case of *Flower* v. *Barnekoff* is not in all respects applicable to the facts of the case at bar. The record shows that a receiver has been appointed in this case, and that funds of the partnership are in his hands, received by him since the commencement of this suit. These funds ought to be divided between the partners. The decree of the lower court will be modified in accordance with this decision, leaving out of the account the fish wheels and realty, as the same are not partnership property.

MODIFIED.