# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

## PHIPPS v. WISE HOTEL CO. AND OTHERS.

September 11, 1913
and
September 7, 1914.

Absent, Keith, P.

1. BILL OF REVIEW—*Estoppel—Laches—Objections of Law.*—Where a
suit to enforce liens on real estate has been referred to a mas-
ter to take an account of the liens and their relative priorities,
and the account has been taken and confirmed without objec-
tion, and a sale of the land has been made and confirmed, and
the proceeds of the sale distributed, and lienors and others
have acquired rights in reliance upon the decrees of the court,
a party holding a vendor's lien on the land, who was party to
the suit and had notice of all the proceedings therein, including
the time and place for taking the account by the master and
of the proceedings to confirm the sale, but who failed to except
to the report of the master or to object to the decree of sale,
to the confirmation thereof, or the manner of distributing the
proceeds, cannot by a bill of review have a re-establishment of
the liens upon the property, since he has by his negligence
put it beyond the power of the court to place the other parties
to the suit *in statu quo.* It is as much the duty of a party
to such a suit to make defence to a commissioner's report
upon a question of law as upon a question of fact, and if he,
by his negligence, neglects to raise an objection until other
parties are placed in a situation which will result in loss if
the belated objection were sustained he is estopped from set-
ting up the objection whether the alleged error be one of law or
of fact.

2. BILL OF REVIEW—*Errors of Former Decree—Laches.*—In order to
found a bill of review for errors apparent on the face of the
record, the errors must have been excepted to and must be
specifically pointed out. Furthermore, in allowing or denying
bills of review a court of equity, will, in addition to the lim-

itation arising from lapse of time, apply the ordinary rules in reference to the laches of the complainant.

3. BILL OF REVIEW—*Facts Must Be Recited or Admitted.*—A bill of review will not lie unless the facts upon which it is based are recited in the decree or admitted in the pleadings.

4. BILL OF REVIEW—*Master's Report—Matters Affected by Extraneous Evidence.*—Whether a vendor's or a mechanic s lien has priority is a question that may be affected by extraneous circumstances, and in such case where the master's report of the liens and their priorities is confirmed without exception thereto, the court will not give relief against alleged errors therein on a bill of review. Nor is this result affected by the fact that the mechanic's lien and deeds in which the vendor s lien are retained were filed with the bill for the enforcement of the mechanic's lien and other liens on the property.

Appeal from a decree of the Circuit Court of Wise county. Decree for the complainant in a bill of review. Defendant appeals.

*Reversed.*

The opinion states the case.

*Bond & Bruce,* for the appellant.

*E. L. Barr* and *E. M. Fulton,* for the appellee.

CARDWELL, J., delivered the opinion of the court.

H. H. Dotson on September 1, 1909, was the owner of a certain lot of vacant land situated in the town of Gladeville, Wise county, Va., and on that day sold and conveyed the same to the Wise Hotel Company, reserving in the conveyance a vendor's lien upon the lot for $3,000 of the purchase money, evidenced by three several notes of even date with the deed, payable respectively at three, four, and five years from their date, with interest on each payable annually. On the same day and year Joe D. Dotson was the owner of an adjoining lot, and con-

veyed the same to said hotel company, reserving a vendor's lien thereon for $2,000 purchase money, evidenced by a note of even date with the deed payable two years after date, with interest payable annually. Both deeds were admitted to record in the clerk's office of Wise county, October 16, 1909. On December 29, 1909, D. J. Phipps contracted with said hotel company to erect for it on said lots a two-story hotel, at the price of $17,000, which sum was increased by extras to $17,450. Up to March 30, 1910, the hotel company had paid to Phipps on the contract price the sum of $12,581.66, leaving a balance due thereon of $4,868.34 for which balance Phipps, as a general contractor, perfected a mechanic's lien upon said lots and building, which was duly recorded May 20, 1910, and in September following he filed his bill in this cause to enforce his said mechanic's lien, referring to the said deeds from H. H. and Joe D. Dotson, respectively, and making copies of them exhibits with the bill. The bill also specifically referred to the vendor's lien retained in said deeds and stated as a fact that H. H. Dotson had transferred one of his said notes for $1,000 to Lilly Clay, who was then the owner of same, and that Jos. D. Dotson had transferred the $2,000 note secured to him by his vendor's lien to the Mashannon National Bank of Pittsburg which was then the owner of the same.

To said bill the said hotel company, H. H. Dotson, Jos. D. Dotson, Mrs. Alice McElroy (lessee of the said hotel), the said bank and Lilly Clay were made parties defendant, the prayer of the bill being that all proper orders be entered and accounts taken; that judgment be entered in favor of the complainant for said sum of $4,868.34 and interest thereon, and that said "lots, with the appurtenances thereunto belonging, be sold and the proceeds applied to the payment of said mechanic's lien," etc.

It appears that Joe. D. Dotson, said bank and Lillie Clay were each non-residents of the State and were proceeded against as such. By decree entered in the cause January 20, 1911, the said hotel company and H. H. Dotson were given until February rules to file their answers to the bill, and the cause was referred to a master commissioner who was required, after ten days notice of the place and object of his sitting to the parties in interest, to proceed to ascertain and report to the court the liens against the said lots, the amount and priorities thereof, and in whose favor existing, and the "value of the lots in question, exclusive of the building thereon erected by the plaintiff, and the value of said building." ·

The hotel company did not answer, but H. H. Dotson did file an answer, claiming, among other things, that his vendor's lien was a prior lien upon said hotel property. The commissioner, on March 27, 1911, filed his report fixing the value of said two lots at $4,500 and the value of the hotel building thereon at $13,000, and stated that the said vendor's liens on which nothing had been paid were the first liens upon the lots, and the balance due upon the mechanic's lien of $4,868.34 in favor of the complainant, Phipps, was the first lien against the building erected by him on the lots, and "that, if on a sale the whole property should sell for less than $17,500, the balance on the vendor's liens, after crediting it with nine thirty-sevenths of the amount realized from the said sale, is the second lien on the building."

Notice of the time and place of the commissioner's sitting was duly given to the hotel company and H. H. Dotson, and it seems as though none was given to the non-residents, but this is immaterial to the consideration of the case, as it appears on this appeal.

At the April term of the circuit court the treasurer of Wise county filed a petition in the cause asserting a lien

upon the hotel property for taxes, and H. H. Dotson
filed an exception to the commissioner's report, but his
exception related only to the failure of the commissioner
to report that the "interest on the vendors' lien retained
in the deed to the Wise Hotel Co. for the lots of land
involved in this case is payable annually; whereupon, a
decree was entered sustaining said exception, confirming
the report of the commissioner in all other respects, giv-
ing a personal decree in favor of complainant (Phipps)
for the amount of his claim, with interest and costs, al-
lowing the claim of the treasurer of Wise county of
$61.74, unpaid taxes, fixing this claim as the first lien
upon the property, and, after setting out said vendors'
liens and the complainant's mechanic's lien, proceeded
as follows: "It is adjudged, ordered and decreed that any
sum realized from the sale of said property shall be di-
vided among the holders of the mechanic's lien and the
vendors' liens in the proportion of the value of the build-
ing and the lots, respectively, to the total value of said
property, that is to say, to E. J. Phipps twenty-six
thirty-sevenths of said amount, and to the holders of the
notes for vendors' liens the residue until said liens are
satisfied in full." Said decree fixed the priority of
sundry other liens which are not involved in the contro-
versy here, and commissioners of sale were appointed,
who, after complying with certain prescribed conditions,
were directed to make sale of the hotel property. The
sale was made on July 10, to O. M. Vicars, as the highest
bidder, at the price of $8,200, which was reported to the
court July 12, 1911, and, on motion of O. M. Vicars, the
purchaser, was in vacation confirmed July 22, 1911. The
decree then entered recites that "notice of motion to
confirm said sale in vacation was given to defendants."

On November 3, 1911, H. H. Dotson, discovering for
the first time, as he claims, that a great injustice had

been done him and the other holders of notes represent-
ing a vendors' lien upon the hotel property, filed a bill of
review in the cause, the object of which was to correct
the alleged injustice, and its prayer was, that the court
"direct that your orator and the other holders of said
vendors' lien notes shall be entitled to a prior lien on
the purchase money derived from the sale of the prop-
erty for the value of said lots, to-wit, the sum of $4,500
with interest thereon from the 27th day of March, 1911,
and their costs in said cause expended."

It appears that the complainant in the original bill
(Phipps) and the contractor who erected the hotel build-
ing in question bid at the sale of the property a sufficient
amount therefor to pay the balance due on his mechan-
ic's lien, with interest and costs, according to the prior-
ities of liens on the property as established by the mas-
ter commissioner and the decree of the court, and with-
out objection on the part of said H. H. Dotson, but O. M.
Vicars, attorney for H. H. Dotson, bid higher and became
the purchaser thereof. The sale, as has been stated, was
reported and confirmed, and the commissioners of sale
were directed to and did disburse the proceeds thereof,
said H. H. Dotson, Lilly Clay and the Mashannon Na-
tional Bank receiving the amounts to which they were,
respectively, entitled under the decree The purchaser,
Vicars, took possession of the property and made im-
provements thereon at a cost amounting to six or seven
hundred dollars and also paid insurance on the building
amounting to $186.07. Said Phipps filed a demurrer
and answer to said bill of review and Vicars answered
the same.

In the written statement of the grounds of his demur-
rer, and in his answer to the bill of review, Phipps took
the position that as the report of the master commis-
sioner stated that he (Phipps) was entitled to be pre-

ferred in the distribution of the proceeds of the sale
of the hotel property to the extent of the relative value of
the building erected on the lots, which was fixed at twen-
ty-six thirty-sevenths thereof, and the report was con-
firmed by the court without exception or objection on the
ground that the priorities of the liens were incorrectly
reported, the bill of review asking a correction of the
decree comes too late; that after the sale of the prop-
erty had been confirmed without objection on the part
of the complainant in the bill of review, H. H. Dotson,
but with his knowledge and consent, and he received his
part of the proceeds of sale, the court could not, with-
out great injustice to respondent, Phipps, set aside said
report or attempt to readjust the priority of liens on the
property as fixed by the commissioner's report and con-
firmed by the court; that as the bill of review did not
offer to refund the amount of money the complainant
had received out of the proceeds of sale and did not aver
that the other creditors to whom disbursements had been
made were either able or willing to refund, the sale could
not be set aside at that time without great injustice to
respondent and the other creditors, and the commission-
ers of sale would be unable to refund to the purchaser
of the property the money paid by him into court, as
they had disbursed the funds recieved by them accord-
ing to the terms and provisions of their report and the
decree confirming the same, H. H. Dotson receiving his
part thereof, and a part of the fund had been paid, with
the knowledge of Dotson and the purchaser of the prop-
erty, to officers of the court, parties entitled to the money
they received; that respondent became a bidder on the
property and bid on it a sufficient amount to make it
bring his lien, according to the terms and provisions of
the decree of sale, and would have made the property
bring a higher price at the time if it had been necessary

to make it pay his debts; that Vicars, the purchaser of the property, had made improvements to the hotel building thereon, amounting to several hundred dollars, and was asking, if the said sale to him be set aside, that he be repaid his purchase money and the amounts which he had expended in making improvements on the hotel; that it would be a matter of great inconvenience to respondent and a loss to him to have the report of liens on the property set aside, and that the complainant, Dotson, had slept on his rights, if any he had, and it was then too late for him to file his bill of review.

In his answer to the bill of review O. M. Vicars, the purchaser of the property, tacitly consented to a resale of the same, provided Phipps would repay to him (Vicars) the amount he had paid to the commissioners of sale, with interest thereon from the date of the payment thereof, and also the amount paid by him on account of permanent improvements on the property, including insurance premiums, with interest on same from the time paid, less reasonable rental value of said property during the time the same has been in the possession of the respondent.

The cause coming on to be heard April 3, 1912, upon the bill of review (process thereon having been served by publication against the non-resident defendants, Joe D. Dotson, Lilly Clay and the Mashannon National Bank, and personally served upon the resident defendants), upon the demurrer and answer of Phipps to the bill of review and the answer of said Vicars thereto, the court overruled the demurrer of Phipps, and undertaking to correct its decree of April 16, 1911, "for error apparent upon the face of the record, in that said decree failed to declare a prior lien on the purchase money derived from the sale of the property in this suit to the extent of forty-five hundred dollars ($4,500.00) thereof

in favor of the purchase money notes held by Lillie P. Clay, H. H. Dotson and Mashannon National Bank of Pittsburg," adjudged, ordered and decreed a redistribution of the purchase money received from the sale of the hotel property, giving to the holders of the vendors' liens priority over said Phipps' mechanic's lien thereon, but gave Phipps the right within twenty days to elect to have a resale of the property, and declared that unless he did elect to have the sale set aside, the purchase money that had been realized therefor would be redistributed by the court and the vendors' liens paid off in full. Phipps, within the twenty days allowed him, filed in the cause his statement refusing to consent either to a resale of the property or to a redistribution of the proceeds of the sale that had been made, and insisting upon his right to have payment of his lien according to the decree under which the property was sold.

By its decree entered April 25, 1912, the court, in view of Phipps' refusal to consent to a resale of the property, deemed it unnecessary to further consider the matters set up in the answer of Vicars, the purchaser, to the bill of review, fixed some unpaid taxes as the first lien thereon, decreed a redistribution of the proceeds of sale in accordance with the opinion and decree of the court in its said decree of April 3, 1912; whereupon Phipps applied for and obtained this appeal.

The controversy here is solely between the appellant, Phipps, and appellee, H. H. Dotson. O. M. Vicars, the purchaser of the property, gave his assent to a resale thereof only upon condition that appellant repay to him $186.07, premiums on insurance he had taken out on the hotel building, and from six to seven hundred dollars expended or alleged to have been expended by him in the way of improvements thereon, which insurance in no way inured to the benefit of appellant, and there is in the

record nothing to show that the amount alleged to have been expended on improvements to the property added anything to the value thereof or would make it sell for more on a resale; so that appellant could not have assented to a resale of the property without not only consenting to a displacement of his lien thereon as fixed by the commissioner's report and the court's decree confirming the same, but would have had to consent to the repayment to Vicars of the amount he claimed to have expended in insurance and improvements upon the property out of the proceeds of a resale thereof, to the prejudice, it might have been to say the least, of appellant's lien thereon established by the court's former decree.

The court had followed the established rule that a sale of land would not be decreed without first ascertaining the amounts and priorities of liens thereon, and its commissioner to whom the cause was referred reported the amount of the liens and their priorities upon the property in question, which report was, without exception on the part of the appellee, H. H. Dotson, in so far as the lien of appellant was to be affected, affirmed. The commissioner reported the property as worth $17,500, and at the sale thereof pursuant to the decree based on the report of the commissioner, it was made by appellant to bring $8,200, an amount sufficient to protect his lien as reported by the commissioner and established by the court's decree. Whether the report of the commissioner was rested upon the construction he placed upon the statute, or upon the facts before him, does not appear, but appellee had not only the opportunity to object to the priority of liens as reported, but the decree confirming the report and ordering a sale of the hotel property when prepared was handed to his counsel, who examined the same, made some unimportant corrections, and without further objection or amendment allowed the

decree to be entered by the court. Furthermore, the sale of the property was made and due notice of the motion to confirm it given to appellee, and he again acquiesced and allowed the sale to be confirmed and the rights of the purchaser of the property to intervene. His negligence in failing to except to the report of the commissioner at the right time, and in failing to object to the decree of sale or to the confirmation thereof, put it beyond the power of the court to correct its decree establishing the liens upon the property without loss to some one of the interested parties, and according to well established equitable principles the loss should be borne by him whose negligence or conduct caused it. In other words, it is as much the duty of a party to a suit of this nature to make defense to a commissioner's report upon a question of law as of fact, and, if he neglects to raise an objection until other parties are placed, on account of his negligence, in a situation which will result in loss if the belated objection were sustained, the principle of estoppel applies with equal force, whether the alleged error be of law or of fact.

"A bill of review is a bill filed to reverse or modify a decree that has been signed and enrolled for error in law apparent upon the face of such decree, or on account of new facts discovered since publication was passed in the original cause, and which could not by the exercise of due diligence have been discovered or used before the decree was made." 3 Enc. Pl. & Pr. 570.

"Further, in order to found a bill of review the errors must have been excepted to; . . . and must be specifically pointed out." 3 Am. & Eng. Decs. in Eq., p. 38, and authorities cited.

In *Richer* v. *Powell*, 100 U. S. 104, 25 L. Ed. 527 the opinion says: "It is within the discretion of the court to grant leave to file a bill of review for matter discovered

since the decree. Leave to file a bill of review may be refused although the fact, if admitted, would change the decree, when the court, looking to all the circumstances, shall deem it productive of mischief to innocent parties, or for any other cause advisable, and where it appears that the applicant has had full opportunity to present his objection and has already availed himself of the benefit of it, leave may be refused.''

''In allowing or denying bills of review a court of equity will, in addition to the limitation arising from lapse of time, apply the ordinary rules in reference to the laches of the complainant.'' *Central Tr. Co.* v. *Grant Loco. Wks.,* 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97; *McQuiddy* v. *Ware,* 20 Wall. 14, 22 L. Ed. 311.

The record in *Keck* v. *Allender,* 37 W. Va. 206, 16 S. E. 520, presented a state of facts very similar to that in the case at bar. In the case cited the bill was filed by Keck, trustee, to ascertain the liens and their priorities against certain real estate conveyed to him in trust, alleging that a deed of trust had also been executed upon the property to one Hagan, trustee, to secure a building association the sum of $500, and a copy of each deed was exhibited with the bill. The bill further alleged that three unreleased mechanics' liens were of record and copies thereof were filed with the bill, as were copies of several judgments which were liens against the land. The cause was referred to a commissioner who made and filed a report of liens, which report was not excepted to, and the court confirmed it, setting forth in its decree the liens and priorities in accordance with the findings of the commissioner. A sale of the property was decreed and the commissioners, on October 13, 1887, reported the sale thereof, which was confirmed and the commissioners directed to disburse the funds in their hands. On March 2, 1888, Pickenpaugh and Reed filed their bill of review alleging that the mechanics' liens of which they were the

holders were incorrectly reported; that they feeling and knowing that they had the prior lien against said real estate, and that their debts were secured to them, and supposing and believing that their said liens had been properly and correctly reported by said commissioner, Dent, and given their priority, rested easy about the matter and did not discover until after the sale had been made and confirmed that the commissioner had made a plain mistake against them," etc., in incorrectly reporting both amounts and priorities of liens. The lower court allowed the bill of review to be filed and granted the relief prayed for as being error apparent upon the face of the record. On appeal to the Supreme Court of Appeals this ruling was reversed, and in the opinion by English, J., at p. 524, it is said:

"In order that the said bill of review should be sustained it was necessary that it should appear from the face of the decree and the pleadings, not only that said plaintiffs in the said petition had valid and subsisting liens by reason of having complied with the requirements of the statute in reference to mechanics' liens, but that the court had committed an error in ascertaining the priority of the liens to the prejudice of the plaintiffs. The report of the commissioner in this case was unexcepted to, and under the rulings of this court will be presumed to be correct, not only as to the principles of the account, but as to the evidence also.   .   .   .   .   .

"This court held, in the case of *Wyatt* v. *Thompson,* 10 W. Va. 645, that 'where defendants have had ample time to make a particular defense to a suit, and have not done so, and show no reason why they have not before made such defense, they cannot be permitted to come in at the last moment and raise such defense, and have the cause sent back to a commissioner or otherwise delayed; but the answer raising such defense may be filed, although under such circumstances it cannot delay the

hearing of the cause.' In the case of *Marling* v. *Robrecht* 13 W. Va., 440, this court held that 'where there are various liens on land of a judgment debtor, it is error to decree a sale of the land without first ascertaining the amount of the liens and their priorities, for the reason that to decree such sale before ascertaining the amount of the several liens and their respective priorities has a tendency to sacrifice the property, by discouraging the creditors from bidding as they probably would if their right to satisfaction of the debts, and the order in which they were to be paid out of the property, had been previously ascertained.' In the case under consideration the amounts and priorities of the liens against the real estate had been ascertained and reported by a commissioner before whom said Pickenpaugh and Reed had ample opportunity of appearing, and said commissioner's report had been approved and confirmed by the court without exception, and a sale of said real estate had been made, the sale reported and confirmed and a disbursement of the proceeds directed by the commissioners who made the sale, before said Pickenpaugh and Reed presented their petition; and yet the court below, in the decree complained of, corrected and changed the priorities of the liens on said realty, and directed the commissioners who made said sale, in making their disbursement, to do so in accordance with the order of priority as thereby corrected. This ruling of the court we must regard as erroneous, for the reasons hereinbefore stated.''

In that case, as in this, there was no admission of facts in the pleadings or recital in the decree sought to be reviewed, and the rule nowhere better established than by the decisions of this court is, that a bill of review will not lie unless the facts upon which it is based are recited in the decree or admitted in the pleadings. *Rawlings* v. *Rawlings,* 75 Va. 76; *Valz* v. *Coiner,* 110 Va. 467, 66 S. E. 730 and authorities cited. In *Keck* v. *Allender, supra,*

as here, the question whether the vendor's or mechanic's lien had priority was one that might have been affected by extraneous evidence, and it is also a well established rule in such cases that where the commissioner's report of the liens and their priorities is not excepted to, the court will not give relief against alleged errors therein on a bill of review. *Shipman* v. *Fletcher,* 91 Va. 490, 22 S. E. 458 and authorities there cited.

The argument for appellee in this case, that by reason of the deeds in which the vendors' liens are retained and appellant's mechanic's lien having been filed as evidence with the bill, the court can consider the commissioner's report on the bill of review, is without merit. The same contention was made for the plaintiffs in the bill of review filed in the case of *Keck* v. *Allender, supra,* where the court's opinion upon that point is conclusive, and that too in a case more favorable in its facts to the contention of the plaintiffs in the bill of review than is the case made by appellee here, who had full knowledge of both the commissioner's report and the decree confirming the same and took no exception thereto, while in *Keck* v. *Allender* the plaintiffs in the bill of review, although parties to the suit, had no knowledge that their mechanics' liens were incorrectly reported.

We are of opinion that the decree under review here is erroneous, and, therefore, it will be reversed, and this court will enter the decree the circuit court should have entered dismissing appellee's bill of review, with costs to appellant, and remanding the case to be further proceeded with in accordance with the views expressed in this opinion.

## UPON A REHEARING.

BY THE COURT:

This case is before us on a rehearing of a decree en-

tered by this court at the September term, 1913, reversing a decree of the Circuit Court of Wise county.

An examination of the record cannot fail to disclose the flagrant negligence of the appellee, H. H. Dotson, in the assertion of his alleged rights in the circuit court. With full knowledge of all the facts upon which he now relies to reverse the decision of this court at the former hearing—

(1) He permitted the commissioner's report, fixing the proportion in which the vendor's lien was to share in the proceeds of sale of the land, to be confirmed;

(2) He suffered the land to be sold;

(3) He allowed the sale to be confirmed;

(4) He stood by and saw the purchaser expending his money in valuable improvements; and

(5) He saw the purchase money collected and disbursed—part of it to the vendor's lien, in accordance with the commissioner's apportionment.

All these things were done with his knowledge and tacit acquiescence, and without once calling the court's attention to alleged errors and irregularities, until he subsequently filed a bill of review in the case. There is no suggestion of fraud, and it seems to us that to grant appellant the relief he asks, at this late day, would be to place a premium on negligence, and bring discredit upon the due and orderly administration of justice. "He was silent when he ought to have spoken; and he should not now be heard to speak when he ought to keep silence." Especially is this true when to grant his plea would entail serious loss upon other litigants who have been misled by his laches.

Upon these considerations, we are of opinion to adhere to our former decision, which we believe to be in accordance with the right and justice of the case.

*Reversed.*